S. AMANDA MARSHALL, OSB #95347
United States Attorney
District of Oregon
**SCOTT M. KERIN, OSB #965128**
Assistant United States Attorneys
Scott.Kerin@usdoj.gov
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Facsimile: (503) 717-1117
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **Case No. 3:12-CR-00231-HZ** |
| **v.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **CALVIN JULIUS WINNS,**<br>     **a.k.a. "Luchi,"**<br>               **Defendant.** | |

_____

The United States of America, through S. Amanda Marshall, United States Attorney for

the District of Oregon, and Scott M. Kerin, Assistant United States Attorney, hereby submits the

following sentencing memorandum for the Court's review. The government asks the Court to

impose a high-end sentence of 24 months' imprisonment, to be followed by a three-year term of

supervised release with the conditions outlined in the Presentence Report, as well as a fine of

$30,000. There is also a $200 statutory assessment. Defendant is free to seek a lesser sentence.

A.    **Summary of Proceedings.**

On January 22, 2013, pursuant to a plea agreement, the defendant pled guilty to Count 2

of his Indictment, which charges him with Interstate Travel for Purposes of Prostitution, in

violation of 18 U.S.C. § 2421; and, Count 3 of his Indictment which charges him with Possession

with the Intent to Distribute Marihuana (Marijuana), in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D). The maximum penalty the Court may impose on Count 2 is not more than 10 years' imprisonment, a fine of $250,000, and up to three years of supervised release. The maximum sentence the Court may impose on Count 3 is not more than five years' imprisonment, a fine of $250,000, and up to two years of supervised release. Each count of conviction carries a separate $100 fee assessment.

A Presentence Report (PSR) has been completed. Sentencing is currently set for April 29, 2013. The government believes that the facts underlying the defendant's count of conviction, his Sentencing Guideline Calculations, and his criminal history are accurately laid out in the PSR. As the PSR notes, on April 26, 2012, a Beaverton detective assigned to the FBI's Child Exploitation Task Force (formerly known as the Innocence Lost Task Force) was operating undercover and investigating women who were posting prostitution advertisements online. During the investigation the detective made a "date" with a young adult woman, "K.A.," in which she agreed to have sex with the undercover detective in exchange for money. When the officer went to her motel room she was arrested for prostitution. After she was arrested, K.A. eventually admitted that she had a pimp, who was the defendant. K.A. said that the defendant was both her boyfriend and pimp and that she had been prostituting since before she met the defendant. As her pimp, the defendant would post on-line ads that advertised her services as a prostitute and he would drive her to her dates. Any money K.A. earned, she gave to the defendant. K.A. estimated she routinely made $1,000 a week.

On April 25, 2013, K.A. told the detective that she and the defendant traveled from the State of Washington to Beaverton, Oregon so that she could "work" for a couple of days. She told the detective that although she was not forced to do any of this, she did not feel she could

say no without the fear of being hit.  K.A. also described prior acts of physical abuse and violence the defendant inflicted upon her.

With this information, officers had K.A. make a call to the defendant and asked to be picked up.  When the defendant arrived at the location, his car was stopped and he was arrested. Inside the car officers found three ounces of marijuana.  The defendant was interviewed and admitted that he sold marijuana.  He also admitted that they had come down from Washington and stopped in Beaverton so that K.A. could "do her thing."  Defendant denied being a pimp.

The parties appear to agree that defendant's guideline calculations are as follows:

| | |
|---|---|
| Base Offense, U.S.S.G. § 2G1.1(a)(2) | 14 |
| Multiple Count Adjustment, U.S.S.G. § 3D1.4 | +1 |
| Acceptance of Responsibility, U.S.S.G. § 3E1.1 | -2 |
| Total Offense Level | 13 |

The defendant's criminal history is within category III.  The defendant's initial advisory sentencing guideline range, prior to any other departures, adjustments or variances, is between 18 and 24 months' imprisonment.

**B.    Sentencing Calculations.**

While not bound by the Sentencing Guidelines, courts must first consult the guidelines and take them into account at sentencing.  *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 767 (2005).  Even though the guidelines are advisory, they remain influential in an effort to ensure nationwide consistency in sentencing.  *Gall v. United States*, 128 S.Ct. 586, 596 (2007) ("to secure nationwide consistency, the guidelines should be the starting point and initial benchmark" for sentencing); *see also, United States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir. 2006) ("[The] continuing duty of district courts to consult the guidelines is statutory").  After the parties are given a chance to argue for a sentence they believe is appropriate, the court should

consider the 18 U.S.C. § 3553(a) factors and decide whether they support the sentence advocated by the parties. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (*citing Gall*, 128 S.Ct. at 596-97 n. 6). The court must then make an individualized sentencing determination based upon the facts. *Id.* The guidelines should not be given more or less weight than the other § 3553(a) factors. *Id.* If the court decides a non-guideline sentence is warranted the Court must ensure the justification is sufficiently compelling to support the degree of variance. *Id.* Once a sentence is selected, the Court must explain its rationale sufficiently to permit meaningful appellate review. *Id.* at 992.

## C.     Government's Recommended Sentence.

Pursuant to 18 U.S.C. § 3553(a), the government asks the Court to sentence the defendant to a high-end sentence of 24 months imprisonment, to be followed by three years of supervised release, with the conditions outlined in the PSR. The government also asks the Court to impose a fine of $30,000 (or in the alternative order the defendant to pay $30,000 to the Sexual Assault Resource Center, a non-profit agency that works with the victims of sex trafficking and sexual assault as a community service payment). There is also $200 in statutory assessments. The defendant is free to seek a lesser sentence, although we ask the Court not to grant his request.

The defendant made money by exploiting a young girl, and dealing marijuana. The government recognizes that in this case, like similar cases, there are some credibility issues as to the extent of the abuse the victim suffered at the hands of the defendant. What is undisputed is that the defendant assisted this young girl in selling her body for sex, and he profited from it. To the defendant, K.A. was simply a product from whom he could make money. The government submits that there are few federal offenses more dangerous than sending a young girl into hotel rooms, vehicles and private homes to have sex for money with anonymous men. Unfortunately, young girls and women who have been trafficked have also been killed, raped, beaten, and

**Government's Sentencing Memorandum**                                                          **Page 4**

robbed.  That risk is always present in the world of sex trafficking – a world in which this defendant was an active participant.

Accordingly, given the factors outlined in 18 U.S.C. § 3553(a), such as the nature and circumstances of the offense; the defendant's violent criminal history and his personal characteristics; the need for the sentence imposed to reflect the seriousness of the offense; the need for the sentence to promote respect for the law; the need for the sentence to afford adequate deterrence to criminal conduct; the need for the sentence to provide just punishment for the offense; the need to protect the public from further crimes of the defendant; and, the need to provide the defendant with needed training or other corrective treatment, the government believes that a high-end sentence of 24 months imprisonment is reasonable and warranted.  We ask the Court to impose it.

At the time of sentencing the government asks the Court to dismiss Count 1.  The defendant waived his appeal rights.

Dated this 25th day of April, 2013.

Respectfully submitted,

S. AMANDA MARSHALL
United States Attorney

*Scott M. Kerin*

SCOTT M. KERIN, OSB # 965128
Assistant United States Attorney
(503) 727-1000

**Government's Sentencing Memorandum**                                            **Page 5**